**Steven G. SCHNEIDER, Petitioner,**

v.

**Lois J. KLEVAN, Respondent.**

Family Court of Delaware, New Castle County.

Submitted Feb. 15, 1991.
Decided March 1, 1991.

Michael K. Newell, Wilmington, for petitioner.

Francine R. Solomon, Wilmington, for respondent.

CONNER, Judge.

This is the Court's decision on the petition of Lois J. Klevan, (hereinafter referred to as Ms. K.) requesting a modification increase in the amount of the support obligation due and owing from Steven Schneider (hereinafter referred to as Mr. S.) for their children Brian L. Schneider, born January 17, 1974, and Michael B. Schneider,

born June 25, 1976. This petition was filed February 26, 1990 and service of said petition was accepted by Michael K. Newell, Esquire, attorney for Mr. S. on that date. Mr. S. has been paying support in the amount of $490.00 per month pursuant to a voluntary agreement reached in 1985. Brian and Michael reside with their mother during the school year and with their father during the summer months, when school is not in session.

Ms. K. contends that her economic circumstances resulting from her efforts to recover from a recurrence of cancer rebut the need to utilize the Melson Formula to calculate the amount of Mr. S.'s support obligation at this time. It has been judicially established that the Melson Formula is the applicable method to determine child support and operates as a rebuttable presumption in all child support cases. See *Dalton v. Clanton*, Del.Supr. 559 A.2d 1197 (1989), Holland, Justice. Thus, the threshold question is whether the facts and circumstances of this particular case are sufficiently unique to render use of the Melson Formula inequitable and to require that the amount of Mr. S's child support be determined by another method.

Ms. K. is currently undergoing treatment for a 1990 recurrence of ovarian cancer. She is being treated at both the Sloane–Kettering Cancer Center in New York City and the University of Pennsylvania Hospital in Philadelphia. Ms. K. is insured by Delaware Blue Cross and Blue Shield who will pay for 80% of her treatments costs in accordance with State of Delaware standard costs for the same treatments. She anticipates that she will incur $10,000.00 in unreimbursed medical expenses for this present series of treatments. This estimate is based on the amount of her unreimbursed expenses for her original cancer treatments received in 1988. In 1988, her medical bills totalled $200,000.00, of which $10,000.00 was not paid by Blue Cross. In addition to her medical bills, Ms. K. has transportation expenses to and from New York and Philadelphia, where she receives her treatments.

■ The Court is satisfied that Ms. K's personal expenses far exceed those of a standard support obligee and that the use of the Melson Formula, which awards each party a monthly self-support allowance of $550.00, would be grossly unfair to her and is totally unrealistic in this particular case. This is a unique case where an extraordinary medical expense to one of the litigants would produce an inequitable result under the Melson Formula.

To determine the amount of Mr. Schneider's support obligation, the Court must consider all the factors set forth at 13 *Del.C.* § 514(1)(2)(3), which provides as follows:
§ 514 DETERMINATION OF AMOUNT OF SUPPORT.
In determining the amount of support due to one to whom the duty of support has been found to be owing, the Court, among other things shall consider:
(1) The health, relative economic condition, financial circumstance, income, including the wages, and earning capacity of the parties, including the children;
(2) The manner of living the parties have been accustomed when they were living together under the same roof;
(3) The general equities inherent in the situation.
The Court will apply these guidelines in a four step procedure:
First, the monthly needs of Brian and Michael must be determined. To accomplish this, the Court will establish the actual monthly expenses of Ms. K., Brian and Michael and deduct those expenses which are related solely to Ms. K's medical needs. Two-thirds of the remaining household expenses plus the boys' school and activities expenses will constitute the monthly needs of Brian and Michael for child support purposes.

The second step will be to determine the amount that Ms. K. should contribute to the financial support of her sons. It will be necessary to calculate her gross and net income and deduct one-third of the household expenses which must be attributed to her. The Court will then balance the remainder of her available monies against the

projected expenses necessitated by her poor health condition.

The third step will be to determine whether Mr. S. has the financial ability to pay the balance of the monthly support needs of his sons. The Court must consider Mr. S's income, his share of his own household expenses, and his general financial circumstances.

The fourth step will be to determine whether any adjustment should be made for the three summer months that the boys reside with their father. Let us review each step separately.

## STEP 1—DETERMINATION OF THE NEEDS OF BRIAN AND MICHAEL

Ms. K. reports that she has the following basic monthly household expenses. Mortgage—$500.00; school and county taxes—$55.00; food (includes special diet food)—$750.00; sewer—$21.00; clothing—$150.00; electric—$85.00; oil—$160.00 (house must be kept warm); telephone—$100.00 (extra calls to father and medical providers in New York and Pennsylvania); household help—$216.00; car insurance—$100.00; gasoline—$80.00. These expenses total $2,117.00. At the time of the ancillary property division hearing in March of 1986, the Court determined Ms. K. to have monthly expenses for herself and the two children at the same residence in Fairfax of $1,823.00. The cost of living has increased approximately 4% each year since 1986. 20% of $1,823.00 is $365.00, which when added to the 1986 expense figure would bring it to $2,187.00. Thus, Ms. K's claimed current expenses for herself and the two boys appear reasonable. For simplicity purposes, the Court establishes the household expenses of Ms. K., Brian, and Michael at $2,200.00; $1,474.00 or two-thirds of this amount is attributed to the needs of the two boys. The Court adds Michael's $900.00 annual fee for books and lunches at Tower Hill, which translates to $75.00 a month, and his $86.00 a month for guitar lessons. Also, Brian has an $86.00 monthly expense for math tutoring. Ms. K. presented some other school expenses for the boys such as trips to Williamsburg and New York, and SAT tutoring. The trips and SAT tutoring are one time expenses. She also listed $85.00 for Michael's rowing team. The Court does not know whether this $85.00 is a one time or annual expense, nor does the Court understand what the $200.00 for Brian's religious activities involves. Therefore, these items are not included as necessary expenses. The Court will add the tutoring, the guitar lessons, and the Tower Hill fees and lunches to the boys' share of the household expenses thus increasing their needs to $1,721.00 per month.

## STEP 2—DETERMINATION OF MS. KLEVAN'S CONTRIBUTION

Ms. K. is employed as a co-teacher by Tower Hill School. In 1990, her teaching income was $14,791.00. In addition, she received dividend and interest income from bonds and C.D.'s of $6,432.00. Ms. K. had a 1990 total gross income from these two sources of $21,223.00, which breaks down to $1,768.00 per month. Using the Employer's Tax Guides, she would have a monthly Federal tax obligation for a single person claiming three dependents of $175.00. The withholding for Delaware State income tax would be $60.80 per month. In 1990, she paid Social Security of $1,191.00 and City wage tax of $194.60. On a monthly basis, the FICA withheld was $99.25 and the wage tax per month translates to $16.22. Subtracting these taxes from her monthly gross income of $1,768.50, she is left with $1,416.00 to meet her own needs and to contribute to the support of her two sons. The one-third share of the household monthly expenses allocated to Ms. K. is $726.00 ($2,200.00 total monthly expenses − $1,474.00 allocated to boys = $726.00). When this amount is subtracted from her net income of $1,416.00, Ms. K. has $690.00 available to contribute to the support of the boys and to meet her extraordinary medical needs.

Concerning these medical needs, she estimates that her unreimbursed medical bills will be approximately $800.00 per month. She spends $100.00 per month in necessary

transportation. When the Court reviews her overall economic circumstances, it cannot be overlooked that her father paid for the majority of her unreimbursed medical costs for her 1988 cancer treatments. Her father presently has serious health problems. Ms. K. will, however, be entitled to receive one more installment of $3,384.00 from Mr. S. from his purchase of her interest in a former marital asset. This payment can be used to meet some of her unreimbursed medical expenses. She can also utilize some of the principal of her invested C.D.'s or bonds which in 1990 produced $6,432.00 interest. The Court finds it fair for Ms. K. to contribute $500.00 to the monthly expenses of Brian and Michael at this time.

### STEP 3—DETERMINATION OF MR. SCHNEIDER'S ABILITY TO CONTRIBUTE

■ After Ms. K's primary support contribution of $500.00, the balance needed for the monthly support of Brian and Michael is $1,221.00. It is next necessary to review Mr. S's financial circumstances to determine whether he has the ability to pay this amount. He is the sole stockholder and chief operating officer of American Paper & Metal, Inc. and receives $44,000.00 annually in salary from that Corporation. Mr. H. Barton Greenspan, CPA for Mr. S., testified that a married person claiming two dependents, would pay Federal income tax of $8,592.00 and that the combined State of Delaware and Pennsylvania income tax would be $2,000.00. Mr. S's 1990 FICA was $3,336.00 and the City wage tax was $550.00. In 1990, he received $980.00 in dividends and $9,843.00 in net taxable rental income from his company. Mr. Greenspan, in computing his cash available, did not consider the straight line depreciation taken on the tax return, but did reduce his available cash by $15,024.00 for the contributions toward mortgage principal of the real estate that he rents to American Paper. The Court feels that it is not fair, in determining Mr. S.'s available income for support purposes, to deduct his contributions toward the acquisition of equity in his business real estate. The interest portion of each monthly has previously been deducted. The Court also must note that in 1989, Mr. S. did not actually pay the taxes that normally would have been paid under the above calculations due to offsetting losses that resulted from the sale of his present wife's pre-marital assets. Mr. S. and his wife filed a joint 1989 and will be filing likewise for 1990. The testimony was not specific, but the impression formed by the Court was that Mr. S's 1990 tax liability again will be substantially reduced by investment losses sustained by his Wife. Mr. S. wants the Court to determine his ability to pay by giving him the benefit of what he hypothetically *would be* paying in taxes if filing a single return, and then use his *actual* full mortgage payment (principal plus interest) to further reduce his available monies.

For purposes of this child support hearing, the Court establishes Mr. S's available net income per month from salary, rent, dividends and interest at $40,345.00 [1] which translates to $3,362.00 per month. Mr. S. reports monthly expenses of $3,362.00 for himself, his present wife, Patricia Schneider, and a sixteen year old stepdaughter. Their largest monthly expenditure is a mortgage payment of $2,100.00. Mr. S's standard of living has increased substantially from that of his former marriage. Even attributing 50% of these significant monthly expenses to Mr. S., he still has remaining over $1,600.00 a month to contribute to the support of Michael and Brian. It must be remembered that he receives several employment benefits such as Blue Cross/Blue Shield, an automobile, plus gasoline, and car insurance.[2] Mr. S. clearly has the financial ability to pay the $1,268.00 per month needed by Michael and Brian.

---

1. $44,000 + $980 + $9,843.00 − $8,592 − $2,000 − $3,336 − $550 = $40,345.00.

2. There was no testimony as to what percentage of the use of the car was attributed to personal use.

## STEP 4—DETERMINATION OF ADJUSTMENT FOR SUMMER MONTHS

Some adjustment is necessary during the summer months due to the fact that Mr. S. will have increased expenses in the categories of food and clothing for the boys and Ms. K. will have decreased expenses in the same areas. The Court reduces the support for these months. Ms. K., of course, will have to maintain her dwelling for her sons who will return to her primary physical custody in September. The Court finds it fair to reduce the amount of Mr. S.'s child support obligation by $600.00 a month for the months of June, July and August. $500.00 of this amount is attributed to food and $100.00 per month to the clothing and other miscellaneous needs of the boys.

## SUMMARY

After considering all of the statutory factors of 13 *Del.C.* § 513, the child support of Steven Schneider for sons Brian Schneider, born January 17, 1974, and Michael Schneider, born June 25, 1976, is established at $1,272.00 per month retroactive to March 1, 1990. Support in this amount shall be for the months of January through May and September through December of each calendar year. For the months of June, July and August of each calendar year, the support shall be reduced to $672.00 per month.

In regards to the retroactivity of this Order, the Court notes that this is not a true modification of support proceeding since there is no existing Order. The Court, however, recognizes the intent of 13 *Del.C.* § 513(d)(2), to make modifications of support retroactive to the date that notice of the petition seeking modification has been given to the respondent either directly or to the respondent's agent. Following the spirit of that statute, the Court establishes the starting date of Mr. S.'s increased support obligation as of March 1, four days after service of the petition was effected on Mr. Newell, his attorney. Counsel is instructed to perform the necessary calculations to determine whether any arrearage exists due to this retroactivity.

Any such arrearage shall be discharged in twelve months, by adding one-twelfth thereof to each monthly payment.

IT IS SO ORDERED.